# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| MICHAEL RUBIN,<br>1625 East 10th St<br>Brooklyn, NY 11223<br>　　　　　　Plaintiff,<br><br>　　v.<br><br>BSB BANCORP, INC.,<br>2 Leonard Street,<br>Belmont, Massachusetts, 02478<br><br>ROBERT J. MORRISSEY,<br>c/o BSB Bancorp, Inc.<br>2 Leonard Street,<br>Belmont, Massachusetts, 02478<br><br>JOHN A. BORELLI,<br>c/o BSB Bancorp, Inc.<br>2 Leonard Street,<br>Belmont, Massachusetts, 02478<br><br>S. WARREN FARRELL,<br>c/o BSB Bancorp, Inc.<br>2 Leonard Street,<br>Belmont, Massachusetts, 02478<br><br>RICHARD J. FOUGERE,<br>c/o BSB Bancorp, Inc.<br>2 Leonard Street,<br>Belmont, Massachusetts, 02478<br><br>JOHN W. GAHAN III,<br>c/o BSB Bancorp, Inc.<br>2 Leonard Street,<br>Belmont, Massachusetts, 02478<br><br>JOHN A. GREENE,<br>c/o BSB Bancorp, Inc.<br>2 Leonard Street,<br>Belmont, Massachusetts, 02478<br><br>ROBERT M. MAHONEY,<br>c/o BSB Bancorp, Inc.<br>2 Leonard Street, | Case No.<br><br>JURY TRIAL DEMANDED |

Belmont, Massachusetts, 02478       )
                                    )
PAUL E. PETRY,                      )
c/o BSB Bancorp, Inc.               )
2 Leonard Street,                   )
Belmont, Massachusetts, 02478       )
                                    )
HAL R. TOVIN,                       )
c/o BSB Bancorp, Inc.               )
2 Leonard Street,                   )
Belmont, Massachusetts, 02478       )
                                    )
JOHN A. WHITTEMORE,                 )
c/o BSB Bancorp, Inc.               )
2 Leonard Street,                   )
Belmont, Massachusetts, 02478       )
                                    )
and                                 )
                                    )
M. PATRICIA BRUSCH,                 )
c/o BSB Bancorp, Inc.               )
2 LEONARD STREET,                   )
BELMONT, MASSACHUSETTS, 02478       )
                                    )
                                    )
            Defendants.             )

**COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**

Plaintiff Michael Rubin ("Plaintiff"), by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel, as to all other allegations herein, as follows:

**NATURE AND SUMMARY OF THE ACTION**

1.  Plaintiff brings this action against BSB Bancorp, Inc. ("BSB Bancorp" or the "Company") and the members of its Board of Directors (collectively, the "Board" or the "Individual Defendants," as further defined below) for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78n(a) and 78t(a) and to

enjoin the vote on a proposed transaction, pursuant to which BSB Bancorp will be acquired by People's United Financial, Inc. ("People's United"), in a 100% stock transaction valued at approximately $327 million (the "Proposed Transaction").

2.      On November 27, 2018, People's United issued a press release announcing it had entered into an Agreement and Plan of Merger dated November 26, 2018 ("Merger Agreement") with BSB Bancorp, pursuant to which BSB Bancorp will merge with and into People's United, with People's United as the surviving corporation in the merger.  Pursuant to the terms of the Merger Agreement, BSB Bancorp's stockholders will receive 2.0 shares of People's United stock for each BSB Bancorp share they own.  The Proposed Transaction is valued at $32.74 per BSB Bancorp share, based on the closing price of People's United's common stock on January 18, 2019.

3.      On January 23, 2018, BSB Bancorp filed a Definitive Proxy Statement on Schedule 14A (the "Proxy Statement") with the SEC in connection with the Proposed Transaction.  The Proxy Statement, which recommends that BSB Bancorp stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (i) the financial projections for BSB Bancorp, relied upon by BSB Bancorp's financial advisor, J.P. Morgan Securities LLC ("J.P. Morgan"), in its financial analyses and People's United's financial projections; (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by J.P. Morgan; (iii) the background process leading to the Proposed Transaction; and (iv) Company insiders' potential conflicts of interest.  The failure to adequately disclose such material information constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act, as BSB Bancorp stockholders need such information in order to make a fully informed decision whether to vote in favor of the Proposed Transaction.

4. In short, unless remedied, BSB Bancorp's public stockholders will be forced to make a voting decision on the Proposed Transaction without full disclosure of all material information concerning the Proposed Transaction being provided to them. Plaintiff seeks to enjoin the stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6. This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper under 28 U.S.C. § 1391 as well as under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, because the conduct at issue had an effect in this District; and the Company is incorporated in this District.

## THE PARTIES

8. Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of BSB Bancorp.

9. Defendant BSB Bancorp is a Maryland corporation with its principal executive offices located at 2 Leonard Street, Belmont, Massachusetts, 02478. BSB Bancorp is the holding company for Belmont Savings Bank ("Belmont" or the "Bank"), a state-chartered savings bank

headquartered in Belmont, Massachusetts. Belmont is a $3 billion, Massachusetts savings bank that provides a full range of banking services for professional commercial real estate investors, developers and managers as well as individuals and local small business owners through two full-service offices in Belmont, one full-service office in Watertown, and three Star Market branches in Waltham, Newton and Cambridge. The Company's common stock is traded on the NASDAQ Capital Market under the ticker symbol "BLMT."

10. Defendant Robert J. Morrissey ("Morrissey") is Chairman of the Board and has been a director of the Company since 1990.

11. Defendant John A. Borelli ("Borelli") has been a director of the Company since 2006.

12. Defendant S. Warren Farrell ("Farrell") has been a director of the Company since 1987.

13. Defendant Richard J. Fougere ("Fougere") has been a director of the Company since 2004.

14. Defendant John W. Gahan III ("Gahan") has been a director of the Company since 2006.

15. Defendant John A. Greene ("Greene") has been a director of the Company since 1990.

16. Defendant Robert M. Mahoney ("Mahoney") is the Company's President and Chief Executive Officer ("CEO") and has been a director of the Company since 2010.

17. Defendant Paul E. Petry ("Petry") has been a director of the Company since 2014.

18. Defendant Hal R. Tovin ("Tovin") has been a director of the Company since 2010.

19. Defendant John A. Whittemore ("Whittemore") has been a director of the Company since 1998.

20. Defendant M. Patricia Brusch ("Brusch") has been a director of the Company since 2017.

21. Defendants Morrissey, Borelli, Farrell, Fougere, Gahan, Greene, Mahoney, Petry, Tovin, Whittemore and Brusch are collectively referred to herein as the "Board" or the "Individual Defendants."

## OTHER RELEVANT ENTITIES

22. People's United is a diversified financial services company with $47 billion in assets. People's United's subsidiary People's United Bank, N.A. Bank, founded in 1842, is a premier, community-based, regional bank in the Northeast offering commercial and retail banking, as well as wealth management services through a network of over 400 retail locations in Connecticut, New York, Massachusetts, Vermont, New Hampshire and Maine. People's United's common stock is traded on the NASDAQ Global Select Market under the ticker symbol "PBCT."

## SUBSTANTIVE ALLEGATIONS

**Background of the Company and Proposed Transaction**

23. BSB Bancorp is a Maryland corporation that owns 100% of the common stock of Belmont and BSB Funding Corporation. BSB Bancorp was incorporated in June 2011 to become the holding company of Belmont in connection with the Bank's conversion from the mutual holding company to stock holding company form of organization. On October 4, 2011 BSB Bancorp completed its initial public offering of common stock in connection with the conversion. At December 31, 2017, the Company had consolidated assets of $2.68 billion, consolidated deposits of $1.75 billion and consolidated equity of $178.03 million.

24.     Belmont is a Massachusetts-chartered savings bank headquartered in Belmont, Massachusetts.  The Bank's business consists primarily of accepting deposits from the general public, small businesses, nonprofit organizations and municipalities and investing those deposits, together with funds generated from operations and borrowings, in one-to-four family residential mortgage loans, commercial real estate loans, multi-family real estate loans, home equity lines of credit, indirect automobile loans (automobile loans assigned to us by automobile dealerships), commercial business loans, construction loans and investment securities.  To a much lesser extent, the Bank also makes other consumer loans and second mortgage loans.  The Bank also offers a variety of deposit accounts, including relationship checking accounts for consumers and businesses, passbook and statement savings accounts, certificates of deposit, money market accounts, Interest on Lawyer Trust Accounts ("IOLTA"), commercial, municipal and regular checking accounts and Individual Retirement Accounts ("IRAs").  The Bank offers a wide range of commercial and retail banking services which include a full suite of cash management services, lockbox, online and mobile banking and global payments.

25.     On October, 18, 2018, BSB Bancorp reported its financial results for the third quarter ended September 30, 2018, including net income of $6.2 million, or $0.66 per diluted share, compared to net income of $4.6 million, or $0.50 per diluted share, for the quarter ended September 30, 2017, a 35.4% increase in net income.  Excluding the one-time impact of the Tax Cuts and Jobs Act in the fourth quarter of 2017, the Bank had attained 21 consecutive quarters of earnings growth.  Defendant Mahoney commented on the successful quarter, stating, "[t]he quarter reflected a continuation of loan and deposit growth.  Importantly, our efforts to increase fee income through residential loan sales and generate income from commercial loan interest rate swaps are bearing fruit."

26. As BSB Bancorp entered 2018, BSB Bancorp's management discussed with the Board the need to consider strategic opportunities, including the acquisition of another financial institution or seeking a larger financial institution as a strategic acquirer. As a result of these discussions, in May 2018, defendant Mahoney asked representatives of J.P. Morgan to identify larger, out of state companies that could be interested in establishing a presence in the greater-Boston market through an acquisition of BSB Bancorp. In addition, the Board authorized defendant Mahoney to approach institutions with an established presence in Massachusetts about a possible strategic acquisition of BSB Bancorp, and to inquire with a smaller, but similarly sized institution in Massachusetts, as to its interest in being acquired by BSB Bancorp (referred to in the Proxy Statement as "Company A").

27. At a June 13, 2018 Board meeting, defendant Mahoney reported to the Board that J.P. Morgan had identified one larger, out of state regional bank holding company as a possible strategic acquirer (referred to in the Proxy Statement as "Company B"). Defendant Mahoney also advised the Board that he had met with the CEO of Company A and that there was no interest in being acquired by BSB Bancorp.

28. On June 19, defendant Mahoney mentioned to Jack Barnes ("Barnes"), President and CEO of People's United, that BSB Bancorp was at a point in its development where it was also reviewing strategic options for moving forward. Barnes suggested that he and defendant Mahoney meet.

29. A week later, on June 27, 2018, defendant Mahoney reported his telephone conversation with Barnes to the executive committee of the Board consisting of defendants Morrissey, Whittemore and Farrell (the "Executive Committee").

30. . On July 10, 2018 defendant Tovin and Walters, who had known each other through business for many years, met and defendant Tovin commented that BSB Bancorp was at a strategic crossroads given developments in the marketplace. Walters and defendant Tovin agreed that the two CEOs should meet. Following this meeting, Barnes called defendant Mahoney and arranged for a meeting on August 20, 2018.

31. Also, in July 2018, defendant Mahoney met with the CEO of a larger bank holding company based in Massachusetts, which company had been an active acquirer in the past (referred to in the Proxy Statement as "Company C"), and discussed their respective companies' business and the industry outlook in general.

32. In early August 2018, defendant Mahoney met with the CEO of Company B, who indicated that they were not interested in exploring a combination with BSB Bancorp.

33. On August 20, 2018, defendant Mahoney and Barnes met, and defendant Mahoney indicated that one of the alternatives being explored by the Board was a strategic acquisition by a larger financial institution such as People's United. During the next several weeks, representatives of People's United contacted representatives of J.P. Morgan to discuss the financial aspects of a prospective combination of the two entities.

34. Almost a month later, on September 12, 2018, defendant Mahoney updated the Board on his discussions with People's United.

35. On September 19, 2018, Barnes called defendant Mahoney and indicated that People's United would have an interest in an all stock acquisition of BSB Bancorp at an exchange ratio of between 1.95-2.0 shares of People's United common stock for each share of BSB Bancorp common stock.

36.     At the September 21, 2018 Board meeting, the Board approved moving forward with a possible transaction with People's United provided that the exchange ratio increased to at least 2:1.

37.     Barnes telephoned defendant Mahoney on September 28, 2018 and agreed to the 2:1 exchange ratio.  On October 1, 2018 BSB Bancorp entered into a confidentiality agreement with People's United.

38.     On November 1, 2018, People's United submitted a non-binding letter of intent to acquire BSB Bancorp in an all-stock transaction at an exchange ratio of 2 shares of People's United common stock for each share of BSB Bancorp common stock.

39.     At the November 26, 2018 Board meeting, J.P. Morgan delivered to the Board its fairness opinion and the Board approved the Merger Agreement.  The Merger Agreement was executed later that evening.

**The Proposed Transaction**

40.     On the morning of November 27, 2018, People's United issued a press release announcing the execution of the Merger Agreement.  The press release states, in relevant part:

> BRIDGEPORT, CT – People's United Financial, Inc. (NASDAQ: PBCT), the holding company for People's United Bank, N.A., announced today an agreement to acquire BSB Bancorp, Inc. (NASDAQ: BLMT), the holding company for Belmont Savings Bank ("Belmont"), a state-chartered savings bank headquartered in Belmont, Massachusetts, in a 100% stock transaction valued at approximately $327 million. Completion of the transaction is subject to customary closing conditions, including receipt of regulatory approvals and the approval of BSB Bancorp, Inc. stockholders.
>
> "We are pleased to welcome Belmont Savings Bank to People's United," said Jack Barnes, Chairman & CEO, People's United Financial. "Together, we share a similar culture, a customer-centric approach to banking and guiding principles centered on relationships, personalized service and community giving. The acquisition will deepen and expand our presence in the Greater Boston area, particularly in the suburbs west of the city, which are attractive banking markets. As such, our Boston MSA deposit market share rank will increase from #13 to #8 on a pro-forma basis."

Established in 1885, Belmont is a community-focused bank providing a range of retail and commercial products and services. With $3 billion in assets, Belmont is a 2018 Fortune 100 "Fastest Growing Company," and has six branches in the Greater Boston area, including three inside Star Markets. The bank has delivered significant organic loan growth since its mutual conversion in 2011 and produced excellent asset quality metrics. Since that time, Belmont has grown its diversified loan portfolio at a compound annual rate of 27% by focusing on commercial relationships, while maintaining its residential lending heritage.

"People's United Bank and Belmont share a rich history in the Northeast, and many synergies that will create significant value for both customers and stockholders," said Bob Mahoney, President & CEO, BSB Bancorp, Inc. "Our customers will benefit from People's United's broader array of products and services, enhanced digital capabilities and expansive branch network. In addition, People's United's success with in-store locations will allow for the seamless integration of our Star Market branches."

People's United expects the transaction to be approximately $0.03 accretive to earnings per common share based on fully phased-in cost savings, with a tangible book value earn-back of 3.1 years and an IRR of over 20%. Under the terms of the agreement, which has been approved by both companies' boards of directors, BSB Bancorp, Inc. stockholders will receive 2.0 shares of People's United Financial stock for each BSB Bancorp, Inc. share. The transaction is valued at $32.42 per BSB Bancorp, Inc. share, based on the closing price of People's United's common stock on November 26, 2018. The transaction is expected to close by the second quarter of 2019.

"The acquisition of Belmont complements our strong organic growth in the Commonwealth of Massachusetts, particularly in the Greater Boston area," said Patrick Sullivan, EVP, Massachusetts Market President, People's United Bank. "We see significant opportunity for further growth in the region, with an eye toward delivering an expanded, tailored service model. The transaction enhances our already robust team of commercial and retail bankers and builds upon the momentum we are generating with the opening of our Seaport branch location early next year, and the recent addition of three new specialized business lines to our Boston-based Commercial team."

**The Proxy Statement Contains Material Misstatements and Omissions**

41.     The defendants filed a materially incomplete and misleading Proxy Statement with the SEC and disseminated it to BSB Bancorp's stockholders. The Proxy Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to vote their shares in favor of the Proposed Transaction.

42. Specifically, as set forth below, the Proxy Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) the financial projections for BSB Bancorp, relied upon by BSB Bancorp's financial advisor, J.P. Morgan, in its financial analyses and People's United's financial projections; (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by J.P. Morgan; (iii) the background process leading to the Proposed Transaction; and (iv) Company insiders' potential conflicts of interest. Accordingly, BSB Bancorp stockholders are being asked to make a voting decision in connection with the Proposed Transaction without all material information at their disposal.

***Material Omissions Concerning the Financial Projections for BSB Bancorp***

43. The Proxy Statement omits material information regarding financial projections for BSB Bancorp.

44. Specifically, in connection with J.P. Morgan's *BSB Bancorp Dividend Discount Analysis*, the Proxy Statement sets forth that J.P. Morgan calculated a range of implied values for BSB Bancorp common stock by discounting to present value estimates of BSB Bancorp's future dividend stream and terminal value. In performing its analysis, J.P. Morgan utilized "earnings and asset assumptions based on BSB Bancorp management's long-term forecasts and extrapolations provided by BSB Bancorp management or directed growth rates thereafter." Proxy Statement at 56. J.P. Morgan discounted the estimated dividend streams from BSB Bancorp for the period of 2018 through 2023 and the range of terminal values of approximately $351 million to approximately $416 million to derive present values, as of September 30, 2018, of BSB Bancorp. *Id.* The Proxy Statement, however, fails to disclose (i) the specific earnings and asset assumptions

and extrapolations or directed growth rates thereafter used by J.P. Morgan in the analysis; and (ii) BSB Bancorp's estimated dividend streams for the period of 2018 through 2023.

45. The Proxy Statement also fails to disclose People's United's financial projections. This information is material, as BSB Bancorp stockholders need to be able to evaluate the worth of the Merger Consideration, which consideration consists entirely of People's United common shares.

46. The omission of this material information renders the statements in the "Certain Financial Projections Utilized by BSB Bancorp's Board of Directors and BSB Bancorp's Financial Advisor" and ""Opinion of BSB Bancorp's Financial Advisor" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning J.P. Morgan's Financial Analyses***

47. The Proxy Statement describes J.P. Morgan's fairness opinion and the various valuation analyses performed in support of its opinion. However, the description of J.P. Morgan's fairness opinion and analyses fails to include key inputs and assumptions underlying its analyses. Without this information, as described below, BSB Bancorp's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on J.P. Morgan's fairness opinion in determining whether to vote in favor of the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to BSB Bancorp's stockholders.

48. With respect to J.P. Morgan's *BSB Bancorp Dividend Discount Analysis*, the Proxy Statement fails to disclose: (i) the specific earnings and asset assumptions and extrapolations or directed growth rates thereafter used by J.P. Morgan in the analysis; (ii) quantification of the inputs

and the assumptions underlying the discount rates ranging from 8.0% to 9.5% used in the analysis; and (iii) BSB Bancorp's estimated dividend streams for the period of 2018 through 2023.

49.  With respect to J.P. Morgan's *BSB Bancorp Public Trading Multiples Analysis*, the Proxy Statement fails to disclose any benchmarking analyses for BSB Bancorp in relation to the selected companies analyzed by J.P. Morgan.

50.  When a banker's endorsement of the fairness of a transaction is touted to stockholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

51.  The omission of this information renders the statements in the "Opinion of BSB Bancorp's Financial Advisor" and "Certain Financial Projections Utilized by BSB Bancorp's Board of Directors and BSB Bancorp's Financial Advisor" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

*Material Omissions Concerning the Background Process of the Proposed Transaction*

52.  The Proxy Statement omits material information relating to the sale process leading up to the Proposed Transaction.

53.  The Proxy Statement sets forth that:

> During the two years preceding the date of J.P. Morgan's opinion, J.P. Morgan and its affiliates . . . have had, and continue to have, commercial or investment banking relationships with People's United for which J.P. Morgan and such affiliates have received or may receive customary compensation. Such services during such period have included acting as financial advisor to People's United in connection with acquisitions it made which closed in April 2017 and July 2017.

Proxy Statement at 58.  The Proxy Statement fails, however, to disclose when the Board was first apprised of J.P. Morgan's conflict of interest for its deep ties to People's United.

54. The omission of this information renders the statements in the "Background of the Merger" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning Company Insiders' Potential Conflicts of Interest***

55. Further, the Proxy Statement fails to disclose material information concerning the potential conflicts of interest faced by BSB Bancorp insiders.

56. The Proxy Statement fails to disclose the specific details of any employment-related discussions and negotiations that occurred between People's United and BSB Bancorp executive officers, including who participated in all such communications, when they occurred and their content. The Proxy Statement further fails to disclose whether any members of BSB Bancorp management are expected to continue with the post-close company as well as whether any of People's United's prior proposals or indications of interest mentioned management retention or board membership in the combined company.

57. Communications regarding post-transaction employment and merger-related benefits during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

58. The omission of this information renders the statements in the "Background of the Merger" and "Interests of BSB Bancorp's Directors and Executive Officers in the Merger" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

59. The Individual Defendants were aware of their duty to disclose the above-referenced omitted information and acted negligently (if not deliberately) in failing to include this

information in the Proxy Statement. Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other stockholders of BSB will be unable to make a fully-informed voting decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder**

60. Plaintiff repeats all previous allegations as if set forth in full.

61. During the relevant period, defendants disseminated the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary to make the statements, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

62. By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy Statement. The Proxy Statement was prepared, reviewed, and/or disseminated by the defendants. It misrepresented and/or omitted material facts, including material information about the financial projections for BSB Bancorp and People's United's, the data and inputs underlying the financial analyses performed by J.P. Morgan, the background process leading to the Proposed Transaction, and Company insiders' potential conflicts of interest. The defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

63. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.

64. By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

65. Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

**Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

66. Plaintiff repeats all previous allegations as if set forth in full.

67. The Individual Defendants acted as controlling persons of BSB Bancorp within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of BSB Bancorp, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

68. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

69. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had

the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of the Proxy Statement.

70.     In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

71.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

72.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, BSB Bancorp's stockholders will be irreparably harmed.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of BSB Bancorp, and against defendants, as follows:

A.     Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants

       disclose and disseminate the material information identified above to BSB Bancorp stockholders;

B.     In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.     Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

D.     Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.     Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated: January 30, 2019

**LEVI & KORSINSKY LLP**

*/s/ Donald J. Enright*
Donald J. Enright (Bar No. 13551)
1101 30th Street, N.W., Suite 115
Washington, DC 20007
T: (202) 524-4290
F: (202) 333-2121
Email: denright@zlk.com
etripodi@zlk.com

*Attorneys for Plaintiff*

**OF COUNSEL:**
**WEISSLAW LLP**
Richard A. Acocelli
Michael A. Rogovin
Kelly K. Moran
1500 Broadway, 16th Floor
New York, New York 10036
Tel: (212) 682-3025
Fax: (212) 682-3010